Edwin W. Rice, Jr., and Others, Plaintiffs, v. George W. Van Vranken, Defendant.

Supreme Court, Schenectady County, May 11, 1928.

Municipal corporations — zoning ordinances — action to restrain defendant from erecting apartment houses within restricted district — permits to erect houses were granted June 4, 1927 — ordinances adopted June 7, 1927, effective two weeks later placed defendant's property within restricted residence district — at that time construction work had not commenced — defendant had acquired no vested right — ordinance applies to defendant — ordinance is not unconstitutional — plaintiffs owning nearby property may maintain action — no adequate remedy at law.

This is an action by property owners to restrain the defendant from erecting apartment houses upon land owned by him and is based on the ground that the erection of the apartment houses will violate a zoning ordinance of the city of Schenectady. Defendant received permits on June 4, 1927, to erect the houses and such permits were valid at the time they were granted. But on June 7, 1927, the common council passed an ordinance which became effective two weeks later restricting the territory in which defendant's property was located and preventing the erection of apartment houses therein. Since the defendant had not commenced any construction work at the time of the passage of the ordinance or when it became effective, he had no vested right in the permits previously granted and, therefore, said ordinance applies to his property and he does not have the right to erect apartment houses thereon.

The defendant, who contends that the zoning ordinance is unconstitutional on the ground that it is confiscatory, unreasonable and arbitrary, has the burden of overcoming the presumption of constitutionality. The defendant has not sustained that burden. It appears that the ordinance was drawn and enacted only after careful and extensive study by the planning commission; that it was given wide publicity prior to its passage and that no objection was raised to the ordinance before its passage. There is no substantial merit in defendant's criticism that the division of the city into one-family, two-family and multiple dwelling districts constitutes class legislation and places an unreasonable restriction upon the use of property. Such division is justified in the interest of public health and public safety.

The defendant is in error in his contention that he has an inherent right to use his property as he sees fit, for the use of property is always subject to reasonable restriction.

The plaintiffs, who own property in the immediate vicinity of defendant's property, have the right, as individuals, to maintain this action in equity to restrain the defendant from violating the ordinance, and the mere fact that there is no precedent for the action is not an obstacle to the exercise of jurisdiction by a court of equity.

There is no adequate remedy at law available to the plaintiffs. The contention of the defendant that the plaintiffs should have proceeded by mandamus against the building inspector is not sustained, because such a proceeding would not furnish an adequate remedy in favor of the plaintiffs.

Action for permanent injunction to restrain violation of Schenectady zoning ordinances.

*Naylon, Maynard, Bates & Smith,* for the plaintiffs.

*Borst & Smith* [*Michael D. Reilly* of counsel], for the defendant.

HEFFERNAN, J.   The plaintiffs have brought this action for a permanent injunction restraining the defendant from erecting apartment houses upon land owned by him at the corner of Union avenue and University place in the city of Schenectady, and on premises adjoining, on the theory that the same is in violation of a zoning ordinance.   Plaintiffs are the owners of, and occupy, one-family residences adjacent to, and in the immediate vicinity of, defendant's property.   On June 4, 1927, permits were issued to defendant according to the provisions of the building code of the city for the erection of the structures in question.   The plans upon which the permits were issued called for the construction of four apartment houses, consisting of three stories and a basement, and the alteration of defendant's residence, so as to provide about thirty-six apartments, including a number of laundries and with provision in the basement for a motor garage designed to house thirty-two cars.   Under the then existing building code the defendant had six months from the date of the permits within which to commence operations thereunder.   No question has been raised regarding the regularity or validity of these permits when issued.   Prior to their issuance, however, and on May 17, 1927, the zoning ordinance in question was introduced in the common council of the city and was duly adopted by that body on June 7, 1927, and became effective two weeks thereafter.   This ordinance divides the city into seven districts, among others, " A," a single-family residence district; " B," a two-family residence district, and " C," a multiple-dwelling district.   The properties of all the parties concerned are within districts "A" and " B."   Although defendant had made expenditures of money for plans and specifications, for financing the proposed apartment houses, and for building materials, neither the work of construction nor any excavation had been commenced by him under the permits until more than five months after the effective date of the ordinance.

Defendant contends that the ordinance was not retroactive and that it had no effect on valid permits issued prior thereto, and that under the authority thereof he has acquired vested rights of which he cannot be deprived.   There is nothing in the zoning ordinance to save existing permits.   In view of the fact that no work had been commenced and no building erected or in course of construction by defendant when the ordinance became effective, the expenditures made and the obligations incurred by him in reliance upon such permits, prior and subsequently to the enactment of the zoning

ordinance, are insufficient to give him a vested right to erect these apartment houses in violation thereof. (*Matter of Fox Lane Corporation* v. *Mann*, 243 N. Y. 550; *People ex rel. Publicity Leasing Co.* v. *Ludwig*, 218 id. 540.) The cases cited by the learned counsel for defendant are clearly distinguishable. Evidently the test in each case as to whether a holder of a permit has acquired vested rights thereunder is not whether he has spent much or little in reliance upon it, but rather whether there has been any tangible change in the land itself by excavation and construction.

The statute (Gen. City Law, § 20, subds. 24, 25, as added by Laws of 1917, chap. 483)* authorizes the city to adopt zoning regulations. Defendant contends, however, that the ordinance in question is confiscatory, unreasonable, unconstitutional and not a proper exercise of the police power. He has the burden of overcoming the presumption of constitutionality applicable to such an ordinance. He must demonstrate that, as a matter of law, the regulations are unconstitutional, and that there is no permissible interpretation which justifies its adoption as a reasonable exercise of the police power of the State. (*Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288.) The police power is founded on the law of public necessity, and while primarily it inheres in the State and is an attribute of sovereignty, a large measure has been delegated to our cities for the purpose of protecting the lives, health and safety of the citizens. It should be responsive to the needs and conditions of the community. Our modern complex civilization, with its changing conditions and requirements, with increasing regulatory and restrictive legislation, has expanded its application to new subjects and demands. With the political, economical and social development of a community, the police power also develops to meet the changed and changing conditions. The preservation of the public health is the most important governmental function.

Before the adoption of this ordinance the territory now included in the "A" and " B " districts was almost exclusively devoted to, and occupied by, one- and two-family houses. It was the intent and purpose of the legislation to continue the character and purposes already established, and to limit these districts to residences of that class. It has been definitely settled that the zoning authorities have power to establish residential districts and to make such classifications effective by adopting such regulations as would be conducive to the welfare, health and safety of the residents thereof, and to exclude apartment houses therefrom. (*Matter of Wulfsohn* v. *Burden, supra; Lincoln Trust Co.* v. *Williams Bldg. Corp.*, 229 N. Y. 313.) The evidence in this case shows that the ordinance

---

* Subdivision 24 was amended by Laws of 1925, chap. 394.— [Rep.

under consideration was prepared after a most careful and extensive study by the planning commission and the expert engineers engaged by it. It was given wide publicity prior to its passage by the common council, and it is quite significant that at the public hearing thereon not a single objection was raised against it. It seems to me that the ordinance is a valid exercise of the police power of the State in the interest of public health and safety. The defendant has failed to establish by competent proof that it is objectionable in any respect. The arguments which he urges against it, with a single exception, were all made in the *Wulfsohn* case, and were so fully and completely answered by Chief Judge Hiscock, in his opinion, that to refute them again is but to slay the slain. The only objection of defendant that requires discussion is his criticism that this ordinance provides for the segregation of residence districts in one family, two-family and multiple dwellings, and that by this method the city has deliberately attempted to separate the people who can afford to live in one-family houses from those whose necessities oblige them to live elsewhere. In this connection he charges that his property has been unreasonably divided between the one- and two-family districts, and that the entire square in which his land is located is classified into three districts. In this he is evidently mistaken because the ordinance (§ 21, subd. c) provides otherwise. It can hardly be doubted that the segregation of residential, business and industrial buildings, where light, air space and health can be secured as normal living conditions, increases the safety and security of home life and makes a better environment for the promotion and perpetuation of the happiness and contentment of the people. Defendant argues that the regulations in this case depend entirely upon æsthetic considerations. The results which they are designed to accomplish are material rather than æsthetic in their nature. The Supreme Court of the United States has given its approval to the views of the Massachusetts Supreme Court that æsthetic considerations might be considered as auxiliary of what thus far have been regarded by the courts as more effective and sufficient reasons. (*Welch* v. *Swasey,* 214 U. S. 91, 108; *Matter of Wulfsohn* v. *Burden, supra.*) As a matter of fact æsthetic considerations are relative. Discordant and unsightly surroundings may be just as distressing to people of keen sensibilities as that which is offensive and unsanitary. It is not unreasonable to say that the health and general physical and mental welfare of society would be promoted by single family residences. Increase in fresh air, freedom for the play of children, and recreation of adults are all thereby advanced. These features of family life are equally essential, equally advantageous, for all individuals whatever be their social standing or

material prosperity. The development of detached houses is retarded by apartments. They detract from the value of neighboring property for home building. Their height and bulk interfere with the circulation of air and bring, as their necessary accompaniments, the disturbing noises incident to increased traffic and business. There is nothing on the face of this ordinance to indicate that it will not operate indifferently for the general benefit. Defendant also urges that he has an inherent right, subject to the exercise of the police power by the public, to erect upon the land which he owns any structure which he deems proper to build, and that the enactment of this ordinance operates as a limitation upon this inherent power. The individual, the use of whose property may be restricted, is not the only person to be considered. The great majority, whose enjoyment of their property rights requires the imposition of restrictions upon the uses to which private property may be put, must also be taken into consideration. The owner of property in the restricted district is not deprived of its use by such regulations. He may use it for the purpose to which the section in which it is located is dedicated. That he shall not be permitted to use it to the desecration of the community constitutes no unreasonable or permanent hardship and results in no unjust burden. Individual interest must yield to public interest. That which is hurtful to the comfort, welfare and safety of society may always be prohibited under the police power, notwithstanding the incidental inconvenience or loss individuals may thereby suffer. Hence it cannot be held as a matter of law that the regulations under review are so arbitrary or unreasonable as to be invalid.

Finally, defendant asserts that plaintiffs have no standing to maintain this action; that they have an adequate remedy at law by proceeding against the building inspector of the city who is charged with the enforcement of the ordinance; and that no case can be found where property owners have been permitted to maintain an action such as this to restrain a violation of the zoning law. The question involved is one of form and not of substance. The absence of precedent presents no obstacle to the exercise of the jurisdiction of a court of equity. The power to make precedent is not exhausted. That authority still rests in the courts. Certainly, the power of the court never depends upon the mere accident as to whether or not there is some prior adjudication on the subject. The fact that no case can be found in which relief has been granted under similar circumstances is no reason for refusing it. If that were so, not infrequently the court would find itself powerless to grant adequate relief, solely because in the dim and distant past the precise question had never arisen. Precedent is only useful

in so far as it points the way in which principles have been applied. In other words, it is merely a guide but never a bar. A court of equity should be responsive to the needs of the people for the purpose of affording remedies and protecting rights. In the administration of justice it should never hesitate to adapt itself in the application of old principles to new situations.

To divest a court of equity of jurisdiction the remedy at law must be plain, adequate and complete. By allegation and proof the plaintiffs here have established that they will be specially and peculiarly damaged if defendant is permitted to consummate his purpose. Under these circumstances what is their remedy? The defendant answers that it is mandamus. Mandamus against whom and for what purpose? Surely, there is no need to invoke this extraordinary remedy against the building inspector for the revocation of the permits, for precisely that result has been accomplished by the ordinance. It is true that the building inspector is required to enforce this legislation. That remedy, however, is not exclusive. Any violation of the ordinance is a misdemeanor. Is the building inspector to be mandamused in order to charge one who violates the ordinance with a crime? The door of the criminal court is open to every citizen for the same purpose. Certainly these plaintiffs cannot, by mandamus, compel the city to institute an action. What action is the building inspector to take that is not available to them? If the plaintiffs should apply to the court for mandamus against the inspector, what procedure will they ask the court to direct him to institute? Obviously, a proceeding against the building inspector would not be complete. It would not end the controversy. He must invoke other process. It cannot be seriously doubted that the remedy in equity is more appropriate and better adapted to effectuate justice between the parties and put an end to this litigation. Manifestly, it would be against equity and justice to decline jurisdiction in the situation presented here. The cases relied on by defendant (*Southern Leasing Co.* v. *Ludwig*, 217 N. Y. 100; *Atkins* v. *West*, 222 App. Div. 308; *Ovid* v. *Moushaty*, 125 Misc. 535; *Whitridge* v. *Park*, 100 id. 367) are not controlling.

In *Southern Leasing Co.* v. *Ludwig* (*supra*) the plaintiff brought a taxpayer's action under section 51 of the General Municipal Law against the superintendent of buildings to revoke a permit theretofore given by him for the erection of a sign upon the roof of a building. The court held that such an action was not the proper remedy but that mandamus was available to the taxpayer to compel the official to act. The distinction between that case and the case at bar is at once apparent.

In *Atkins* v. *West* (*supra*) the action was brought by plaintiff to

restrain the defendant from constructing and maintaining a motor vehicle service station. A motion was made to dismiss the complaint on the ground that it did not contain facts sufficient to constitute a cause of action. The question involved was one of pleading only. The court held that the action could not be maintained. Mr. Justice Van Kirk, who wrote the opinion, was careful, however, to point out that plaintiff's property was not adjacent to that of the defendant, and that an action in equity could not be maintained under such circumstances in the absence of some allegation by plaintiff of injury or damage to his person or property. In the case at bar plaintiffs bring themselves within that rule.

In *Owid* v. *Moushaty* (*supra*) the question arose on a motion for an injunction *pendente lite* to restrain the defendants from proceeding with the erection of a commercial garage in a residential district in the city of Utica. There it appeared that the defendants were building a garage under a permit authorized by the proper city officials. The court denied the application, and in the opinion it is said that " there are no allegations which show any special or peculiar injury to the plaintiffs or their property which does not apply equally to all other property within the surrounding territory." Obviously, that is not a parallel case.

In *Whitridge* v. *Park* (*supra*) the question arose on a demurrer to the complaint for failure to state a cause of action. There the Special Term held, in dismissing the complaint, that equity will not undertake to restrain an act which violates a municipal by-law or ordinance unless the act is a nuisance *per se*. In its opinion the court stated that the complaint utterly failed to allege any special facts which would not be equally applicable to other owners and residents in the district. On appeal (179 App. Div. 884) the Appellate Division did not affirm the order made at Special Term unconditionally, but affirmed with leave to the plaintiffs to plead over. That decision indicates that an action in equity might be maintained after the allegations in the complaint were reformed.

Here the plaintiffs are not suing as taxpayers. They have invoked the equitable jurisdiction of the court to prevent a threatened wrong. The menace to their property is imminent, and unless the defendant is stayed it will become a reality. It may be that a garage containing thirty-two cars immediately adjoining one's home is not a nuisance in law. Nevertheless it becomes dangerously near one in fact. That the plaintiffs will be irreparably damaged by the erection of these apartment houses, with the garage and the numerous laundries contemplated, can hardly be open to serious question. Clearly the defendant is threatening to act to their detriment in defiance of law. I am convinced that their

grievances are meritorious and should be redressed, and that this is not the time to make illusive and inconsequential distinctions in order to determine whether, in their quest for protection, they should have entered the court house through the law or the equity portal.

Plaintiffs are, therefore, entitled to the relief prayed for, with costs.