In the Matter of the Application of CHARLES O. EATON, Appellant, for a Mandamus Order against EDWARD C. SWELNY, as Commissioner of Public Safety of the City of Saratoga Springs, New York, Respondent.

Third Department, May 13, 1931.

*David W. Burke* [*William E. Bennett* and *Stephen H. Keating* of counsel], for the appellant.

*John A. Slade*, for the respondent.

*Spencer B. Eddy*, for the Saratoga Springs Commission, *amicus curiœ*.

WHITMYER, J. Petitioner is applying for a permit to erect a one-story fireproof building, to be used for a restaurant, of the " dining car " type, on an unimproved lot on the westerly side of Broadway, Saratoga Springs, N. Y., which he has owned since 1928, or thereabouts, and still owns.

Permission was refused on the ground that it would be a violation of the Zoning Ordinance for the city, adopted on or about December 1, 1924. Petitioner acquired the lot after the ordinance was adopted.

The city was divided into four zones, A, B, C and D. The last two are the ones to be considered here.

The lot is in Zone C, which prohibits the uses of any building or premises therein for business purposes of any kind, except for hotels, boarding houses, sanitariums, philanthropic, fraternal or eleemosynary uses, or institutions other than correctional.

Zone D is unrestricted, except for any business, trade or use that may become a nuisance, with certain provisos, not material here.

After the refusal, petitioner applied to the city council for a rezoning of the premises from Zone C to Zone D, but his application was denied.

The ordinance permits the council to amend, alter and change, on petition and certain consents, which were not obtained, and certain conditions, which were not complied with.

Now, it is claimed that the commercial and business character and uses of the property were established long prior to the enactment of the ordinance and that petitioner is entitled to the permit as matter of right.

The properties on both sides of the street, north of the block

in which petitioner's lot is located are in Zone D. These consist almost entirely of stores, except the Grand Union Hotel property on the northerly side and Congress Park on the easterly side.

The block in which petitioner's lot is located is bounded by Congress street on the north, Broadway on the east, William street on the south, and Hamilton street on the west. The lot has a frontage of 136 feet on Broadway and about 96 feet on Hamilton street.

A trolley station, now used as a terminal by the Schenectady Railway Company, is just north of the lot and belongs to the State of New York. And the Columbian Hotel property, a summer hotel, adjoins it on the south. The other properties to the south, on both sides of the street, consist almost entirely of stores, hotels and boarding houses, except Convention Hall and the Masonic Temple.

What actuated the city council in placing the block in which petitioner's lot is located in Zone C instead of Zone D does not appear. However, the determination was for the city council and the court may not interfere, unless it appears that there has been abuse of discretion, bad faith, " or that its action was unreasonable, arbitrary, discriminatory or illegal." (*Matter of Goldenberg* v. *Walsh*, 242 N. Y. 576, decided on dissenting opinion below, 215 App. Div. 396.) The presumption is that the ordinance is constitutional and a reasonable exercise of the police power. (*Rice* v. *Van Vranken*, 132 Misc. 82, 84; affd., 225 App. Div. 179; affd., 255 N. Y. 541; *Village of North Pelham* v. *Ohliger*, 216 App. Div. 728; affd., 245 N. Y. 593.) And petitioner acquired the lot after the adoption of the ordinance, so that, presumably, he bought subject to the limitations of the ordinance. (*Lincoln Trust Co.* v. *Williams Bldg. Corp.*, 229 N. Y. 313, 318; *People ex rel. Fordham M. R. Church* v. *Walsh*, 244 id. 280, 288.)

The petition alleges that the character of the property is and has been strictly business property, owned and used for more than twenty-five years before petitioner acquired it by the Hudson Valley Railway Company as railroad property and as a passenger and freight terminal, during which period stores and stands for various kinds of business were located and conducted thereon, and that the last business before the enactment of the ordinance was a gasoline filling station and parking business during 1922 and 1923. Next, one of petitioner's affiants swore that he operated a restaurant on this very lot from 1911 to 1916. And in an affidavit in reply to the answering affidavits, it is stated that others have been permitted to conduct business in restricted sections. As to that, the question is whether or not petitioner has " been

illegally oppressed," not whether some one else " has been favored." (*Matter of Larkin Co.* v. *Schwab*, 242 N. Y. 330, 336; *People ex rel. Fordham M. R. Church* v. *Walsh*, 244 id. 280, 290.) What use there was, if any, in addition to the railway use, at the time of the adoption of the ordinance, does not appear, although petitioner stated, on the argument, that there was no additional use at that time. And the evidence does not show any, except the railway use.

Section 8 of the ordinance provides: " A non-conforming use existing, or authorized by a lease in writing duly executed, at the time of the passage of this ordinance, may be continued. But such non-conforming use shall not be extended nor shall a structure designed, arranged, or intended for a non-conforming use, in whole or in part, be enlarged except for a conforming use."

An existing use may be continued, but a new or different use may not be substituted. The ordinance controls, except as to the existing non-conforming use. (*Matter of Jewell* v. *Murphy*, 224 App. Div. 763; *Matter of Canberg* v. *Kleinert*, 225 id. 875; *Matter of Boyd* v. *Walsh*, 217 id. 461, 467; affd., 244 N. Y. 512; *Matter of Empire City Racing Assn.* v. *City of Yonkers*, 132 Misc. 816.)

An affiant said that he conducted a restaurant on the lot from 1911 to 1916 and the papers state that the gasoline filling station and the parking business were conducted there in 1922 and 1923. Apparently, these uses were additional to the railway terminal use, which was the real use. Whether or not there was any additional use between said dates does not appear. And it does not appear that there was any additional use when the ordinance was adopted. Under the ordinance, only a non-conforming existing use could be continued.

Different and temporary non-conforming uses, which were abandoned before the ordinance, did not give a vested right to the continuance of such uses and do not entitle petitioner to the permit as matter of right. (*People ex rel. Fordham M. R. Church* v. *Walsh, supra; Matter of Larkin Co.* v. *Schwab, supra; People ex rel. Facey* v. *Leo*, 230 N. Y. 602.)

It was a matter for the city council to determine and, in the absence of proof of abuse of discretion, bad faith, unnecessary hardship, or unreasonable, arbitrary and illegal action, the court may not interfere.

I think that the order should be affirmed.

All concur, except HILL, J., who dissents and votes for reversal of the order on the law, and the granting of an alternative order of mandamus on the ground that an issue of fact was presented by the pleadings which requires a trial before the right to a peremptory order of mandamus can be determined.

Order affirmed, with fifty dollars costs and disbursements.