In the Matter of the Application of LOUISE S. BALLARD, Administratrix, etc., of JAMES SWEENEY, Deceased, Petitioner, for a Peremptory Mandamus Order Directed to JOHN ROTH, as Building Inspector of the City of North Tonawanda, and Others, Respondents.

Supreme Court, Niagara County, September —, 1931.

*Moot, Sprague, Brownell, Marcy & Carr* [*Welles* V. *Moot* and *Helen Z. N. Rodgers* of counsel], for the petitioner.

*Milton E. Praker*, for the respondents.

NORTON, J. The petitioner, as administratrix c. t. a and trustee under the will of James Sweeney, deceased, is seeking a peremptory mandamus order requiring the building inspector, the zoning and planning commission and board of appeals and the fire chief of

the city of North Tonawanda, to consider and pass upon the application for a building permit to erect upon premises therein described a commercial gasoline service station, according to the plans and specifications attached to such application, which application was filed with said building inspector December 11, 1930; and to authorize, issue and deliver to petitioner a written permit to erect a building as set forth in such application. The application complied with all the requirements of law, and with all of the provisions of the charter and ordinances of the city of North Tonawanda, except that the application was not accompanied by a verified petition signed by two-thirds of the resident property owners within a radius of 500 feet of the boundaries of the proposed location of such station, as is specifically required by section 9-b of the Zoning Ordinance of said city.

On January 15, 1931, the building inspector reported the application to the zoning and planning commission, reporting that it did not comply with said section 9-b of the Zoning Ordinance, in that it was not accompanied by a verified petition of the resident property owners within a radius of 500 feet of the proposed location, and that " no such petition of any sort accompanied such application." The same day said commission in effect refused to act on the application and adopted a resolution reading, in part, " that this Board can take no official consideration of said request," on the stated grounds that it " is not presented in regular form " and " is not accompanied by the petition as required by section 9-b of the Zoning Ordinance."

The petitioner's plans provide for a gasoline pump and a brick and tile building on concrete foundations, to cost about $8,000. The location is on the east side of Webster street, about midway between Sweeney and Tremont streets, and is within the " Mercantile District " or zone of said city; it is now occupied by a one-story frame structure used as a service garage. Webster street is approximately ninety-nine feet wide, including sidewalks. Petitioner is the owner of the entire frontage on the east side of Webster street between Sweeney and Tremont streets.

Upon the property immediately south of the proposed location is a three-story brick building extending to Sweeney street; immediately north are three one-story frame store buildings, two of which are now vacant and the one on the corner of Webster and Tremont streets is now occupied by a florist. On the property immediately in the rear of the proposed location is a large wooden factory building, occupied by the Van Raalte silk factory. The west side of Webster street between Sweeney and Tremont streets is a full block of store buildings, some now vacant, others tenanted.

Within two city blocks of the proposed location are eight gasoline service stations or pumps for the sale of gasoline to the public.

December 19, 1927, the city of North Tonawanda, by its common council, duly adopted a City Plan Ordinance, thereby placing the city within the provisions of chapter 690 of the Laws of 1926. Pursuant to such City Plan Ordinance and said law, a city planning commission was duly created and appointed with full power to, and it did, duly adopt a city plan for said city. And the city at that time also, by its common council, duly adopted a " Building Code," wherein among other things it divided the city into fire districts, and classified all buildings, by occupancy and by construction; and made especial provisions regulating the character of construction and installation of equipment of public gasoline stations. And the city, at that time also, by its common council duly adopted a " Zoning Ordinance " and " Zoning Map " and thereby divided the city into three districts or zones, designated as industrial, mercantile and residential, respectively. In such Zoning Ordinance the city classified various uses for which buildings could be erected, and premises could be used, within the respective zones. Under such Zoning Ordinance and law a board of appeals was duly created, appointed and empowered to hear, review and determine appeals and review decisions " of the building inspector and the like," and due procedure therefor was duly provided.

In section 2, as to the industrial district, and in section 3, as to the mercantile district, such Zoning Ordinance prohibits public gasoline stations, as follows: " No building, premises or other structure shall be erected, used or maintained which is arranged, intended or designed  *  *  *  for any of the following purposes: " Public gasoline stations, except as hereinafter provided."

While as to residential districts, section 6 of the Zoning Ordinance provides that " The Board of Appeals, in its discretion may permit the location of commercial gasoline stations in the Residence District but under continuing limitations, which shall safeguard the public, the adjoining  owners and conserve the values of property in the neighborhood or district, but which discretionary permits shall be conditional for the period of time specified therein and upon the applicant executing and filing an instrument to the effect that the granting of the permit shall not give him a vested and continuing right to maintain such commercial gasoline stations in the Residence District."

The Zoning Ordinance thereafter provides, under the title " Public Gasoline Stations and Pumps," in section 9-b, as follows: " No other grants for commercial gasoline stations or pumps in any

districts within the City, except as before stated, shall be allowed without the consent of the Board of Appeals upon petition thereto.

" Any person requesting a permit for the installation of gasoline pumps and the erection of a public gasoline station shall accompany the request with a sworn petition signed by two-thirds ($\frac{2}{3}$) of the resident property owners within a radius of 500 feet, of the boundaries of the proposed location."

And in sections 10, 10-a, 10-b and 10-c, under the title " Non-Conforming Uses Existing at the Time of Passage of Ordinance," the right to continue to carry on a non-conforming use (such as a public gasoline station) that was existing, viz., in operation, at the time of the adoption of the Zoning Ordinance, was fully recognized, and, so far as such confirmation was necessary, was duly confirmed by such Zoning Ordinance.

That the Zoning Ordinance, its regulations and restrictions, as to trades, industries, location of buildings, the division of the city into districts, the prescribing for each such district the trades and industries that shall be excluded therefrom and the uses for which buildings shall not be erected, and that such regulations promote the public health, safety and general welfare, and are made with reasonable consideration to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the direction of building development, is in accord with a well-considered plan, as required by subdivision 25 of section 20 of the General City Law, is clear and is not questioned by petitioner.

While petitioner concedes the validity of the Zoning Ordinance in general, she contends that the provision of section 9-b which reads: " Any person requesting a permit for the installation of gasoline pumps and the erection of a public gasoline station shall accompany the request with a sworn petition signed by two-thirds ($\frac{2}{3}$) of the resident property owners within a radius of 500 feet, of the boundaries of the proposed location," is (1) Ultra vires; and (2) it violates the due process and equal protection clauses of the Federal and State Constitutions, and is an unlawful delegation of legislative power to less than a majority of the resident property owners within a radius of 500 feet of the proposed location, and is, therefore, void.

Analysis of section 9-b, in question here, discloses that no grant or permit for a new commercial gasoline station in the industrial or mercantile districts of the city shall be allowed without the consent of the board of appeals upon a verified petition signed by two-thirds of the resident property owners within a radius of 500 feet, of the boundaries of the proposed location, accompanying the request for the permit.

Thus the allowance of such permit may not be considered nor acted upon by the Board unless the request therefor be accompanied " with a sworn petition signed by two-thirds ($\frac{2}{3}$) of the resident property owners within a radius of 500 feet; " the practical effect of which proviso is to prevent the presentation of any such request to the Board.

That such limitation upon the action of the Board is a proviso and not an exception I believe. (See *Rowell v. Janwrin*, 151 N. Y. 60, in which on page 68 the court says: " An exception is, generally, part of the enactment itself, absolutely excluding  *  *  *  some subject or thing that would otherwise fall within its scope. But when the enactment is modified by engrafting upon it a new provision, by way of amendment, providing conditionally for a new case, it is in the nature of a proviso.")

Accepting the provision in question as a proviso it may, if invalid, be eliminated without interference or affecting the remainder of the ordinance. Petitioner, herself, took the position, both upon the argument and in her brief, that she " Does not challenge the validity of the Zoning Ordinance of North Tonawanda in general, but only the specific provisions of section 9-B, requiring the petition of two-thirds ($\frac{2}{3}$) of the resident property owners," etc.

If the proviso is void, for any reason, being separable from the rest of the ordinance, its invalidity does not invalidate the balance of the ordinance. (*Oppenheim Apparel Corp. v. Cruise*, 118 Misc. 368; *Duryee v. Mayor, etc., of New York*, 96 N. Y. 477; *Skaneateles W. W. Co. v. Village of Skaneateles*, 161 id. 170.)

The provision in question, as a proviso, is subject to the same rules and limitations that the ordinance as a whole is.

To be valid an ordinance, passed under general authority, and not under a specific grant that defines " its details and mode of enforcement " (*People ex rel. Knoblauch v. Warden*, 216 N. Y. 154, 162), must be reasonable. (*People v. Newman*, 109 Misc. 622; *Brink v. Village of Elmira Heights*, 139 id. 818; *Mayor v. D. D., E. B. & B. R. R.*, 133 N. Y. 104; *Village of Carthage v. Frederick*, 122 id. 268; *Safee v. City of Buffalo*, 204 App. Div. 561; *Matter of Stubbe v. Adamson*, 220 N. Y. 460.)

The presumption is that an ordinance is reasonable, and constitutional. (*Rice v. Van Vranken*, 132 Misc. 82; affd., 225 App. Div. 179; affd., 255 N. Y. 541; *Matter of Wulfsohn v. Burden*, 241 id. 288; *Matter of Eaton v. Sweeny*, 232 App. Div. 459, 461.)

And such presumption applies to this proviso. But if, upon its face, it is unreasonable or on proof of extrinsic facts its unreasonableness is established, it is void and may be so declared.

That this proviso, requiring the affirmative action, by their

sworn petition, of two-thirds of the resident owners within 500 feet, will, in many instances, require the impossible, is a fair inference. In this case petitioner herself owns three separate store buildings and a brick block, within the 500-foot limit. Would she, if a resident, count as one or four, on such petition? The silk factory adjoining on the east covers many times as much space as some of the small residences and store buildings within the limits, yet the owner of the factory and the owner of any of the small residences or stores are on a par in counting the numbers within the 500 feet. There are within the limits a number of gasoline service stations or pumps. The owners of the land so occupied, given the power, may reasonably be expected to block the setting up of competition in their immediate vicinity.

Neither zoning ordinances nor their application are immutable. That both the ordinances, their restrictions and the application thereof must be reasonable, under the circumstances, as to location, property and surroundings to which they apply is the law as stated by the Court of Appeals in two recent decisions, viz.: *People ex rel. St. Albans-S. Corp.* v. *Connell* (257 N. Y. 73); *Dowsey* v. *Village of Kensington* (Id. 221).

The contention of petitioner that the proviso is void, as *ultra vires*, in that it delegates to less than one-half of the resident owners the power to defeat the granting of a permit, raises a most difficult question; one upon which authorities widely differ.

The proviso does, in the guise of the so-called sworn petition of two-thirds of the resident owners required thereby, in effect preclude any application for a permit, unless such two-thirds consent thereto and evidence such consent by signing and verifying such petition. The result is that the failure to so petition, by the full two-thirds, determines the application adversely, thus substituting the action, or rather failure to act, of those whose interest or caprice may align them against the application, in the place of the judgment or discretion of a tribunal constituted pursuant to law.

After digesting the following opinions of the Supreme Court (*Eubank* v. *Richmond*, 226 U. S. 137; *Cusack* v. *City of Chicago*, 242 id. 526; *Gorieb* v. *Fox*, 274 id. 603), Metzenbaum, in his Law of Zoning (at p. 277) says: " If there be any rule that may be pronounced, it is that if the action of the property owners has the effect of legislation, then it is deemed to fall within the forbidden delegation of legislative power.

" On the other hand, if the consents are used for no greater purpose than to *waive* a restriction which the legislative authority itself has created and in which creation it has made provision for

waiver, then such consents are generally regarded as being within constitutional limitations."

Nor has the subsequent decision of the Supreme Court in *Washington ex rel. Seattle Title Trust Co.* v. *Roberge* (278 U. S. 116) clarified the matter or announced a rule of general application.

However, a city may not impose restrictions or conditions upon the granting or withholding such a permit, other than those contained in the law. If it assumes to do so, such conditions are *ultra vires.* (*Matter of Barker* v. *Switzer*, 209 App. Div. 151, 153; *City of Utica* v. *Hanna*, 202 id. 610; *Matter of Melita* v. *Nolan*, 126 Misc. 345; *Coley* v. *Campbell*, Id. 869; *City of Glens Falls* v. *Standard Oil Co.*, 127 id. 104, 109.)

I, therefore, conclude that the proviso which requires that a request for a permit to install gasoline pumps and erect public gasoline stations shall be accompanied with a sworn petition signed by two-thirds of the resident property owners within a radius of 500 feet of the boundaries of the propsed location, contained in section 9-b, is invalid and void.

Such proviso being void, it is eliminated from the Zoning Ordinance, leaving the other provisions of the ordinance and of section 9-b intact, in force and fully effective. (See authorities hereinbefore cited.)

Section 3 of the Zoning Ordinance in terms prohibits the erection of any structure and the use of any premises within the mercantile district, which is arranged, intended or designed to be used for " Public Gasoline Stations except as hereinafter provided," the exception being the provisions of section 9-b.

It follows that, under the ordinance as it stands, after such elimination, no public gasoline station may be installed, erected, maintained or used at the location for which petitioner seeks such permit herein " without the consent of the Board of Appeals upon petition thereto."

The fact that there are numerous other public gasoline stations and pumps within the mercantile district, eight of which are within two city blocks of the proposed location in question, in no wise helps petitioner's application or position. Such stations and pumps were in existence and use at the time of and prior to the passage of such Zoning Ordinance. Under the provisions of section 10 thereof they have been continued and may continue. The existence and continuance thereof does not constitute an illegal discrimination. (See Baker, Legal Aspects of Zoning, p. 144, and cases cited; Metzenbaum, Law of Zoning, p. 288, and cases cited; *Matter of Eaton* v. *Sweeny*, 232 App. Div. 459, 462.)

Nor does the existence and continuance thereof constitute a

reason or ground for permitting petitioner to use her premises for similar purposes.

The fact that there were eight gasoline pumps or public gasoline stations in operation within two city blocks of petitioner's premises in question at the time of the adoption of the Zoning Ordinance and the districting of the city thereby, which have the right to continue in operation indefinitely, might constitute a reason for the board of appeals refusing to allow any addition to such number.

However, it is for the board of appeals to determine, under the provisions of the Zoning Ordinance, as deleted by striking therefrom the aforesaid illegal provision, and under the provisions of section 81 of the General City Law, whether petitioner's request or application for such permit shall be allowed. The board of appeals may be required to consider and pass upon such request, but whether it will allow or deny the same is for the board of appeals to determine, for itself, in the fair exercise of the power and discretion vested in it. The court may not direct what such action shall be. (*People ex rel. St. Albans-S. Corp.* v. *Cornell*, 257 N. Y. 73, where the court says, on page 81: " Its [the board of standards and appeals] judgment should be final unless it clearly appears to be arbitrary or contrary to the law.") (*Matter of Eaton* v. *Sweeny*, 232 App. Div. 459–462; *People ex rel. Werner* v. *Walsh*, 212 id. 635; affd., 240 N. Y. 689.)

Such determination is, however, subject to review by the courts, as provided by section 82 of the General City Law.

Petitioner's motion is granted to the extent of directing and requiring the said board of appeals to consider and pass upon petitioner's said request for a permit for the erection of said proposed building and to that extent only; in all other respects the motion is denied, without costs of the motion to either party.

An order to the foregoing effect may be entered.