## Clarke's Appeal

*John C. Youngman,* for appellants.

*S. Dale Furst, Jr.,* of *McCormick, Herdic & Furst,* for Spur Distributing Co.

RHONE, J., December 16, 1939.—Sometime prior to June 18, 1937, the papers do not show the exact date, application was made to the Zoning Administrator of the City of Williamsport by Spur Distributing Company and the Pennsylvania Railroad Company, for a permit designated in the application, "to alter the two-story building to be used for gasoline station on property of the Spur Distributing Company, at 475 Market Street, between the Pennsylvania Railroad and Pine Street, Williamsport, Pa." The general shape of the lot and location of the proposed building was set forth on a map attached thereto.

The original papers of the zoning board of appeals have been lost or mislaid, and by stipulation of counsel a copy of the original application and other papers attached thereto, not including the maps, were stipulated as constituting the record, and set forth in appellee's exhibit no. 1. Copies of the maps referred to were offered in evidence and it appears that this application was refused by the zoning administrator on June 18, 1937. The application also contemplated the installation of a 15,000 gallon storage tank on the premises referred to, but difficulties were encountered in the matter of unloading, and the application was amended to include the installation of a 15,000 gallon storage tank at Hepburn Street and the Pennsylvania Railroad. It is further contemplated that the gasoline so to be stored at Hepburn Street would be transported through a pipeline running across Hepburn Street, Pine Street, and Fifth Street in the City of Williamsport, and on or over the right of way of the Pennsylvania Railroad Company which crosses these streets at grade.

As a part of the proceedings, applicants also secured from the Pennsylvania State Police Bureau of Fire Protection at Harrisburg a certificate that the plans for the installation of this 15,000 gallon capacity underground gasoline tank, and the Viking rotary pump to be installed at Market Street, met the requirements of the regulations of that bureau, with certain conditions imposed, not material here. This was supplemented, however, by a certificate requiring the installation of five 3,000 gallon tanks in lieu of one 15,000 gallon tank. Later, this certificate was further modified by one permitting the installation of one 15,000 gallon tank at Hepburn Street and Erie Avenue and providing for the erection of a pipeline, so that the gasoline could be transported from the Hepburn Street storage to the Market Street filling station, and two Erie electric pumps were specified for this purpose.

However, the zoning administrator refused the permit, and an appeal was taken to the zoning board of appeals. That body overruled the zoning administrator and, under date of August 25, 1937, directed a permit to issue to construct "a gasoline service station and storage tank, per plans submitted with occupancy permit at 475 Market Street, Williamsport, Pa., and a building permit to repair or erect a gasoline service station and storage, per plans submitted with occupancy permit at 475 Market Street, probable cost of alteration at Market Street were said to be $5,000."

It is proper to state at this point that after the zoning board of appeals reversed the zoning administrator, he refused to issue the permit, and a writ of mandamus was secured by applicants, and the order of court requiring the permit to be issued was complied with by the zoning administrator under date of September 4, 1937.

An appeal was allowed by the court from the order of the zoning board of appeals on September 21, 1937, and in the order allowing the appeal applicants or permittees

were restrained from proceeding with the installation of the underground storage tank and underground pipeline contemplated to be installed, as furnishing the means of transportation of gasoline stored at Hepburn Street to the filling station at Market Street.

The late Judge Metzger, who allowed this appeal, having died, the matter came on to be heard before the writer of this opinion on September 22, 1938, and quite a voluminous record was made by the testimony offered by both parties.

Appellants here are Michael E. Clark, Chief of the Williamsport Fire Department, and Bethel A. M. E. Church, the owner of a property immediately adjacent to the Hepburn Street location referred to.

The Zoning Ordinance of the City of Williamsport, authorizing the erection of such storage tanks in certain localities in Williamsport, in accordance with plans and specifications to be approved by the authorities, city and State, was repealed on April 21, 1938, and an attempt made to void the permit issued September 4, 1937, so that, at the time this case was reached for trial, it was unlawful in the City of Williamsport to install gasoline tanks of this capacity under the terms of the zoning ordinance.

So we have this situation. The Spur Distributing Company applied for a permit to erect a gasoline station at 475 Market Street, and install a 15,000 gallon gasoline tank for storage. It was determined that the storage tank could not be located there, so the application was extended or amended to include permits to alter the building at 475 Market Street and install storage tanks at Hepburn Street, and transport the gasoline there stored via a pipeline over the right of way of the Pennsylvania Railroad Company, across Hepburn Street and the other streets mentioned, to 475 Market Street. The bureau of fire protection finally decided to require the installation of one 15,000 gallon tank at Hepburn Street. The zoning

administrator refused to permit, the zoning board of appeals reversed him, and he still refused to issue the permit until the mandamus was issued. However, he did issue the occupancy permit and storage permit and this appeal was taken. A restraining order was also issued restraining the applicant from doing any work under this permit until the court should decide the matter.

In addition to the facts above stated, which are considered by the court as findings of fact, the court makes the following specific findings of fact in this case:

### Specific findings of fact

1. Prior to the enactment of the Zoning Ordinance of the City of Williamsport, in an area of 185 feet by 70 feet, at the northwestern corner of the intersection of the Pennsylvania Railroad and Hepburn Street, in the City of Williamsport, there existed one 15,000 gallon storage tank, used by the Tydol Gas Company for wholesale storage. Two similar tanks were installed and used by the B. C. Keefer Company for wholesale storage; two 15,000 gallon underground tanks, used by the Domoco Gas and Oil Company for the wholesale storage of gasoline, were installed on these premises.

2. In 1931, the City of Williamsport passed a zoning ordinance specifying the location in question as light industrial, and by section 11-18 prohibited the storage of gasoline in such location in excess of an amount necessary for use or sale at retail on these premises. By the amendment of April 3, 1938, sec. 44, subsec. E-30, if the zoning board of appeals be of the opinion that unusual hazard to life and property will not be created, said board is authorized to permit gasoline storage in underground tanks in a light industrial district.

3. The amendment of April 3, 1933, permitting the zoning board of appeals to authorize the installation of gasoline underground storage tanks in light industrial districts, above referred to, was repealed after the permit

in this case was issued, and while this appeal was pending, to wit, on April 21, 1938.

4. A pipeline to reach the filling station at 475 Market Street, from this proposed location on Hepburn Street, near the Pennsylvania Railroad, would have to cross Hepburn Street, Pine Street, and Fifth Street, all public highways in the City of Williamsport, and the City of Williamsport has not by ordinance or otherwise ever granted permission to plaintiffs to cross any one of these streets or public highways with the pipeline contemplated in the application made for the permit in this case.

5. Three extraordinary and disastrous floods have visited the City of Williamsport within the last 50 years, viz., June 1889, in which the water rose more than 33 feet above low water mark, and the location at Hepburn Street, where it is proposed to install this gasoline tank, was submerged by about six feet of water at that time. In May 1894, a flood of nearly similar proportions visited Williamsport with like effect. In March 1936, the most disastrous flood we ever had in Williamsport occurred, and this location was again submerged by several feet of water.

6. During the flood of 1936, a severe fire occurred in the City of Williamsport, following the explosion of an underground gasoline tank located within three blocks of Hepburn Street. and Erie Avenue, and destroyed a substantial building in the business part of the city, and at the east end of the city two tanks of at least 15,000 gallon capacity went out and gasoline escaped in that part of the city known as "Faxon" on the water which backed up.

7. Following the flood of 1936, the joint committee of the American Petroleum Institute, International Association of Fire Chiefs, and National Board of Fire Underwriters, in April 1937, published recommended safeguards from flammable liquids storage tanks in regions subject to floods, and in that report said:

"During the past 12 months unprecedented floods in Connecticut, Pennsylvania, Ohio, Indiana, and Kentucky have resulted in great damage to properties which have never been inundated. These floods have produced new problems in the field of fire protection particularly with respect to the storage of flammable liquids." And it is also stated in the report in connection with underground tanks:

"In addition to the foregoing requirements the capacity of each new tank installed shall be restricted to not more than 3,000 gallons."

8. The rectangle bounded by the railroad, Domoco Gas and Oil Company retail station, Erie Avenue, and the junk yard, is owned by the Pennsylvania Railroad Company and is now, and was prior to the passage of the Williamsport Zoning Ordinance, occupied as follows:

Within an area 185 feet by 70 feet are located:

(*a*) One overhead 15,000 gallon gasoline storage tank used by the Tydol Gas Company for wholesale storage.

(b) Two overhead 15,000 gallon gasoline tanks used by Brua C. Keefer for wholesale storage.

(*c*) Two 15,000 gallon underground gasoline tanks used by the Domoco Gas and Oil Company for wholesale storage.

Within this same area (185 feet by 70 feet) applicants propose to install a 15,000 gallon underground gasoline storage tank. The nearest of these large tanks is 105 feet from the Bethel A. M. E. Church. These tanks are filled by pumping and gravity from tank cars on the siding located on the north of the railroad just west of Hepburn Street. There is no fence surrounding the area and the various occupants do their loading and unloading independently of one another. The gasoline is removed from the storage tanks for retail use elsewhere by tank wagons.

9. The land slopes generally from west to east and lies entirely within what is known as the "flood area", having been under six feet of water flowing rapidly eastward in 1936.

North of the railroad and east of Hepburn Street in the path of a flood crossing the ground where the tanks are located is a residential district.

10. From the testimony offered in this case the court finds that an unusual fire hazard already exists at Hepburn Street and Erie Avenue as the result of the gasoline tanks already installed there for storage purposes to the extent of 60,000 gallon capacity.

11. The proposed installation of a 15,000 gallon gasoline storage tank at Hepburn Street and Erie Avenue, or in lieu thereof the installation of five 3,000 gallon tanks as an alternative proposition, in addition to the storage tanks already installed on this property, having a capacity as above stated, would create an unusual fire hazard and endanger life and property in the City of Williamsport.

### Discussion

Taking up the question as to what legal effect shall be given to the repeal of the provision of the zoning ordinance, permitting gasoline storage tank installation after the permit had issued in this case, while this appeal was pending, we find that the weight of authority establishes the following principle:

The holder of a permit previously issued to him, unless he does something of a substantial character towards the construction of the building in question before enactment of the zoning ordinance, acquires no vested right by virtue of the permit to erect the building in violation of said ordinance: City of Lansing v. Dawley, 247 Mich. 394, 225 N. W. 500.

It is further held in this case that if permittees have done nothing beyond obtaining the permit, they would be obliged to suffer the effect of zoning change of their property from business to residential, with the result that the subsequent revocation of the permit would have been lawful and effectual. See also People, etc., ex rel. v. Bales, etc., 224 App. Div. 87, 229 N. Y. Supp. 550, which

case was affirmed by the New York Court of Appeals, 250 N. Y. 598, 166 N. E. 339.

In another New York case it was held that if the holder of the permit has not entered upon the construction of his building, nor incurred any liability for work and material, prior to the adoption of the zoning ordinance, the adoption of the ordinance ipso facto revokes his permit: Rice, Jr., et al. v. Van Vranken, 255 N. Y. 541, 175 N. E. 304.

On the other hand, if, before the enactment of the zoning ordinance, and. in reliance upon a valid permit previously issued to him, one does anything of a substantial character toward the construction of a building, the erection of which is prohibited by the ordinance, he thereby acquires a vested right to erect the building, which cannot be destroyed by the ordinance subsequently enacted: City of Lansing v. Dawley, supra; Sandenburgh v. Michigamme Oil Co., 249 Mich. 372, 228 N. W. 707.

In the case of City of Lansing v. Dawley, supra, it was also held that preliminary work, before enactment of the zoning ordinance, consisting only of ordering the plans and causing a survey to be made of the lot, is not of a substantial character towards the construction of the building in question, and so is not sufficient to create a vested right in the holder of a permit to erect the building.

And in Rice, Jr., et al. v. Van Vranken, supra, it was held that where the only work done, or liability incurred, prior.to the revocation of a permit by the adoption of a zoning ordinance, was for traveling expenses and tentative plans, no vested right relieving the holder of the permit from the provisions of the ordinance was created.

And finally it was held by the lower court in Rice, Jr., et al. v. Van Vranken, 132 Misc. 82, 84 (subsequently affirmed by the Court of Appeals, supra).

". . . the test in each case as to whether a holder of a permit has acquired vested rights thereunder is not

whether he has spent much or little in reliance upon it, but rather whether there has been any tangible change in the land itself by excavation and construction." See also Herskovits et ux. v. Irwin et al., 299 Pa. 155.

We, therefore, hold that there is not sufficient evidence in this case to show that plaintiff, Spur Distributing Co., had any vested right in the permit which was issued to it dated September 4, 1937, and that the repeal of that portion of the zoning ordinance under which the permit was granted effectively revoked this permit unless the restraining order issued by the court at the time the appeal was allowed, and after the permit was granted, operates to affect the situation otherwise.

Neither counsel nor the court have been able to find a parallel case upon this question. This court, however, is of the opinion and holds that the mere receipt of the permit to make these improvements did not in and of itself constitute such a vested right as could not be revoked by repeal of the ordinance in question. The authorities hold that it is only after work has begun, or substantial liability incurred prior to the revocation, that the vested right doctrine is invoked. Seventeen days elapsed between the granting of the permit and the order allowing the appeal in this case, during which time, so far as the record in this case is concerned, applicants did nothing toward doing any work or incurring any liability for such work on the premises where the improvements were to be made, which would give them any vested right in the matter. The prohibitory injunction issued in this case at the time the appeal was granted merely operated to preserve the status quo and to make the appeal itself a supersedeas. Plaintiff could acquire no vested right since that time, and we therefore hold that the repeal of the provision of the zoning ordinance, authorizing installation of the gasoline storage tanks in April 1938, effectively operated to revoke the permit. We might dismiss the case here, but in view of the fact that this is an

important case, and to avoid the necessity of sending the case back for findings of fact if the appellate court shall disagree with this conclusion, we have concluded to take up the other questions also.

## Unusual fire hazard proposition

We have already found as a fact that the installation of a 15,000 gallon tank, or five 3,000 gallon tanks in lieu thereof, because of special conditions which exist in time of flood, and upon the other evidence in the case, would create an unusual fire hazard in the City of Williamsport and endanger life and property, and the order appealed from, so far as it permits installation of gasoline storage tanks at Hepburn Street, will be reversed and the permit issued therefor will be revoked. This conclusion may at first blush be at variance with the rule of the Supreme Court in Manorville Borough v. Flenner, 286 Pa. 103, decided more than 13 years ago. Since that time the damages which have resulted in flood areas by the explosion of gasoline tanks, and the escaping gasoline, due to the law of buoyancy, have become a very important factor, affecting gasoline storage, and a hazard to life and property created thereby, which was not considered by the Supreme Court in the above case. This factor has become so important as to result in the condemnation of the installation of large storage tanks in areas likely to be flooded, by the National Fire Protection Association, which body expressed itself upon this question as set forth in the seventh finding of fact herein stated. There are other distinguishing facts in this case which we think justify the conclusion this court has made under the facts in this particular case.

## The pipe line situation

We have concluded as a matter of law that neither the zoning board of appeals, nor the zoning administrator, has any power or jurisdiction to authorize this, or any other applicant, to cross public highways in the City of

Williamsport with pipe lines, or install them upon the right of way of the Pennsylvania Railroad Company in order to accomplish this purpose. Under no circumstances can the permit operate beyond allowing the improvements to be made at 475 Market Street, against which improvements there is no particular objection. The permit will be modified accordingly.

*Conclusions of law*

1. The issuance of the permit to the Spur Distributing Company, whence arises this litigation, did not in and of itself confer such a vested right in the recipient as to entitle it to proceed to erect and install the gasoline storage tanks contemplated, notwithstanding the repeal of the ordinance under which the appeal was granted in April 1938.

2. The Spur Distributing Company not having entered upon the construction of the building, or installation of its tank at Hepburn Street and Erie Avenue, nor incurred any liability for such work or material incident thereto prior to the repeal of the ordinance under which the permit was issued, no vested right was acquired to proceed with the work after such repeal.

3. The mere fact that the court issued a prohibitory restraining order at the time the appeal was allowed, 17 days after the permit issued, during which time it did not enter upon the work, nor incur any liability for working material, cannot avail the Spur Distributing Company as a legal weapon to successfully sustain its contention that it did, at any time in this proceeding, acquire a vested right to proceed with the work contemplated by it under this permit.

4. Because the installation of the 15,000 gallon storage tank referred to would create an unusual fire hazard and endanger life and property in the City of Williamsport, so much of the permit issued as provides for the installation of its gasoline storage tank at Hepburn

Street and Erie Avenue should be revoked upon that ground.

5. Since no valid ordinance or other action was ever taken by the City of Williamsport, authorizing the Spur Distributing Company to erect a pipe line across Hepburn Street, Pine Street, and Fifth Street in the City of Williamsport, the zoning board of appeals was without jurisdiction to grant a permit to the Spur Distributing Company to erect its proposed pipe line, even though it be installed on the right of way of the Pennsylvania Railroad Company which crosses these streets at grade.

6. The permit authorized by the zoning board of appeals should be modified to the extent that the permit should be limited to the alteration or erection of the buildings proposed by the Spur Distributing Company in its application, at its premises 475 Market Street.

7. The record costs on this appeal to be paid by the Spur Distributing Company, and each party to pay its own costs otherwise.

*Order*

Now, December 16, 1939, the order of the zoning board of appeals directing the permit of September 4, 1937, to issue is modified to the extent that so much of said permit as authorized the Spur Distributing Company to erect, install, and maintain a 15,000 gallon storage tank at Hepburn Street and Erie Avenue, in the City of Williamsport, or in lieu thereof five 3,000 gallon storage tanks, and authorized the erection and maintenance of a pipe line from that location to 475 Market Street, on and over the right of way of the Pennsylvania Railroad Company, which right of way crosses Hepburn Street, Pine Street, and Fifth Street in the City of Williamsport, is revoked, and so much of the permit as permits the alterations and improvements at 475 Market Street, in the City of Williamsport, without reference to the storage tank or pipe lines, is affirmed.