In the Matter of CONCERNED CITIZENS OF MONTAUK, INC., et al., Respondents, v SAMUEL G. LESTER et al., Constituting the Zoning Board of Appeals of the Town of East Hampton, Appellants. GERTRUDE W. ANDRADE et al., Intervenors-Appellants.

Second Department, April 24, 1978

## APPEARANCES OF COUNSEL

*Tooker, Tooker & Esseks (William W. Esseks* and *Stephen R. Angel* of counsel), for intervenors-appellants.

*Smith, Finkelstein, Lundberg, Crimmins & Yakaboski (Robert C. Crimmins* of counsel), for appellants (relying upon the brief submitted for the intervenors-appellants).

*William F. Dudine, Jr.,* for Concerned Citizens of Montauk, Inc., respondent.

## OPINION OF THE COURT

GULOTTA, J.

This case poses the question whether the use of certain premises as a restaurant, bar and motel may be continued as a vested nonconforming use, or whether such usage has been abandoned. Stated differently, the crucial issue is whether, on the effective date of an amendment to the zoning ordinance here involved, there was an "existing use" of the premises as a restaurant, bar and motel. If there was, then a valid nonconforming use came into being with the passage of the amendment. If there was not, then a nonconforming use was not created and the only available relief would lie by way of a variance.

Petitioners, Concerned Citizens of Montauk, Inc. and Group for America's South Fork, Inc., instituted this article 78 proceeding to review a determination of the Zoning Board of Appeals of the Town of East Hampton which, in effect, authorized the operation of a restaurant, bar and motel on premises owned by intervenors George Andrade and Carl Antholz, as a continuation of a pre-existing (now nonconforming) commercial use (the personal representative of George Andrade was substituted upon his death). The Supreme Court, Suffolk County, granted their petition and permanently enjoined the

issuance of a certificate of occupancy. The zoning board and the intervenors-owners appeal.

I believe the matter must be remanded to the zoning board of appeals for further consideration of the issue of abandonment.

It appears without contradiction on the present record* that the parcel in question was acquired by the intervenors in 1968 and that, during the ensuing six years, it was sold twice. The intervenors had "taken back" a purchase-money second mortgage in 1970. Thereafter, in May, 1975, the intervenors reacquired the fee in lieu of foreclosure, with the apparent intention of restoring the buildings and finding a suitable tenant to operate them. Difficulties arose, however, because in November, 1974 the area of which the subject parcel is a part was "upzoned" from a district in which multiple dwellings were permitted to a "Residence A" district, in which the operation of a restaurant, bar and motel is prohibited. To further complicate matters, it is undisputed that the intervenors' immediate predecessors in title acquired the property "as a real estate investment", never operated the businesses situated thereon, and that the premises in question had not been so utilized since the intervenors first acquired the fee in 1968. As a result, a substantial issue was created as to the status of the subject property in terms of the uses to which it might legally be put. Petitioners contended before the board that the pre-existing use had been abandoned. As was heretofore stated, the zoning board found to the contrary.

On this state of the record, Special Term properly determined that the legality of the proposed operation depended entirely upon its status as a vested nonconforming use and that proof of the latter required the production of evidence that the usage relied on had not been abandoned as of the date that the subject rezoning became effective (see *Village of Waterford v O'Brien,* 39 AD2d 490; *Reformed Church of Mile Sq. v City of Yonkers,* 8 AD2d 639; *Matter of Eaton v Sweeney,* 232 App Div 459, revd on other grounds 257 NY 176; 1 Anderson, American Law of Zoning [2d ed], § 6.10 *et seq.;* 2 Rathkopf, Law of Zoning and Planning [3d ed], p 58-3; see, also, *Matter of Deyo v Hagen,* 41 AD2d 790, 791). Generally speaking, abandonment of a use is more than the temporary

---

* For a more detailed statement of the facts, see the comprehensive summary contained in the dissenting opinion of Mr. Justice MARGETT.

cessation of operations, or even their prolonged discontinuance *(Baml Realty v State of New York,* 35 AD2d 857; *City of Binghamton v Gartell,* 275 App Div 457; cf. *Matter of Deyo v Hagen, supra,* p 791), and requires the concurrence of two factors (1) nonuser, coupled with (2) an intent to abandon (see *Matter of Putnam Armonk v Town of Southeast,* 52 AD2d 10,15). Thus, as was stated by Mr. Justice LAZER at Special Term: "[T]he use for which property is adapted need not have been actually conducted at the time of the adoption of the [zoning] ordinance if the manifest intent of the owner, as demonstrated by monetary expenditures or other overt conduct, was to use the property for * * * [the asserted] purpose *(Village of Sands Point v. Sands Point Country Day School,* 2 Misc. 2d 885 [889] * * * aff'd 2 A.D. 2d 769)." (Cf. *Matter of Putnam Armonk v Town of Southeast, supra.)* Accordingly, it remained open to the intervenors to demonstrate to the board that although their predecessor in title never operated the premises as a restaurant, bar and motel, it intended to preserve such usage, but was prevented from doing so by factors such as an inability to procure a willing tenant or other substantial impediment over which it had no control (see 1 Anderson, American Law of Zoning [2d ed], § 6.61; see, also, *Matter of Carlington Corp. v Siegel,* 61 AD2d 813). Moreover, it is not inconceivable that, in the absence of some such proof, the zoning board could have found an abandonment, as it has also been held that "a protracted period of disuse, unaccompanied by circumstances which belie [an] intent to abandon, may be regarded as an abandonment" *(Matter of Deyo v Hagen,* 41 AD2d 790, 791, *supra).*

Applying the foregoing considerations to the case at bar, Special Term correctly determined that the zoning board of appeals employed an improper standard when it relied on the fact that the use of the premises as a restaurant, bar and motel had never been abandoned by its *present* owners, for, as has already been indicated, it is the conduct of those who were owners *as of the date of the "upzoning"* which is controlling (see *Village of Waterford v O'Brien,* 39 AD2d 490, *supra; Reformed Church of Mile Sq. v City of Yonkers,* 8 AD2d 639, *supra; Matter of Eaton v Sweeney,* 232 App Div 459, *supra).* As of the date of the "upzoning" here, in November, 1974, the present owners (the intervenors) were merely the mortgagees of the property and, as such, *their* intentions or inability to

alter the use of the premises were immaterial. If the pre-existing legal use had already been abandoned on that date by the then owners, no right to continue as a nonconforming use could have arisen (see *Village of Waterford v O'Brien, supra; Matter of Eaton v Sweeney, supra;* 1 Anderson, American Law of Zoning [2d ed], § 6.10, p 378). Under such circumstances, the intervenors' present efforts to re-establish the previously abandoned use would require a variance.

The zoning board having predicated its determination of nonabandonment upon an improper basis, I believe that Special Term should have remanded the matter to the zoning board of appeals for further consideration of the abandonment issue in accordance with appropriate guidelines (see *People ex rel. Smith v Walsh,* 240 NY 606; see, also, *Matter of Brooklyn Union Gas Co. v Maltbie,* 245 App Div 74). I would also note that since the intervenors were not represented by counsel when the matter was last before the board, and therefore may have been unaware of the manner of demonstrating nonabandonment, the zoning board may deem it advisable to conduct a further hearing before rendering a new determination.

I cannot agree with my dissenting brother that the mere fact that the intervenors reacquired the fee in lieu of foreclosure demonstrates such financial distress on the part of their predecessor in title as to render its nonuse of the premises presumptively involuntary so as to preclude any finding of an abandonment of the pre-existing use. In any event, I believe that this determination should be made in the first instance by the zoning board.

Accordingly, the judgment appealed from should be modified, on the law, to the extent of vacating the permanent injunction and remanding the matter to the zoning board of appeals for further proceedings not inconsistent herewith, and, as so modified, the judgment should be affirmed insofar as it has been appealed from, without costs or disbursements.

MARGETT, J. (dissenting). I dissent and would reverse the judgment insofar as it has been appealed from and dismiss the proceeding.

The sole issue before this court is whether the zoning board of appeals correctly determined that the use of the intervenors' property for restaurant and motel purposes was never abandoned. The relevant facts are not in dispute.

The intervenors' property consists of approximately 12 acres

in Montauk, New York, 40% of which is considered wetland. There are three buildings on the property—one is set up for use as a bar and restaurant; an adjoining motel contains about 15 units; and a third building, with approximately 1,000 square feet, is of unknown use. The motel and bar-restaurant were operated for 10 or 15 years, until 1967 or 1968. During and subsequent to that period of time the property was in a zone which permitted multiple dwellings and both the motel and the bar-restaurant were permitted uses.

Intervenors George Andrade (whose personal representative was substituted upon his death) and Carl Antholz purchased the property in December, 1968 as an "investment". In February, 1970 they sold the property to one Leonard Milgraun (Scamram Realty Corporation) and took an $80,000 second mortgage. In October, 1972 the property was conveyed to Oceanfront Associates. In November, 1974 the property was rezoned to "Residence A", in which a motel and restaurant are not permitted uses. At that time the property had not been used for six or seven years. On May 12, 1975 the property was reconveyed to the intervenors in lieu of foreclosure.

After acquiring title, the intervenors began searching for someone who would lease the property for use as a motel-bar-restaurant. To make the property more attractive, and to provide for more parking space, the intervenors decided to move the bar-restaurant structure to another location on the same site. On or about September 18, 1975 they applied to the zoning board of appeals for the following relief: (1) a special permit under section 518 of the zoning ordinance pertaining to the use of wetlands (the proposed new site is not, however, upon a wetland portion of the intervenors' parcel); and (2) a variance to move an existing nonconforming use.

The threshold issue before the board with respect to both branches of the application was whether the motel and bar-restaurant were indeed legal nonconforming uses. The board concluded that they were and made the following relevant findings:

"5. While the applicant admits that the business was not in operation at the time of the upzoning he demonstrated no intention to abandon the use.

"6. The buildings while in a state of disrepair were not altered from their uses, the bar and equipment to support the

restaurant operation remains on the premises and the motel is capable, of use.

"6a. Any rehabilitation necessary would be in the nature of repair or replacement of existing fixtures. * * *

"9. At the time of the upzoning the applicants were merely the holders of a second mortgage. They under the terms of that mortgage did not have the power to compel the mortgagors to continue the operation of the bar, restaurant and motel.

"10. The board therefore finds that the use which existed on [sic] November 1974, the time of the upzoning to Residential A was not abandoned."

Both the special permit and the variance were granted.

Petitioners commenced an article 78 proceeding to review the board's determination, contending that it was in error in finding that the motel, bar and restaurant were existing nonconforming uses. Special Term agreed and held that there had been an abandonment of the prior use. It found that the board's "inquiry should have concerned the intent of the owners between 1970 and 1975 and particularly the one which was in possession at the time of the rezoning." Special Term stated that there was no evidence on this point and noted that the board had erroneously "relied on the fact that the premises had remained physically unaltered and had been put to no other use." Special Term found, to the contrary, that "[t]he actions of the predecessor owner in permitting its property to *remain unused* and in ultimately conveying it back to the intervenors seven months after the rezoning are not consistent with an intent to operate a restaurant or motel" (emphasis supplied). Special Term concluded that "[i]n fact * * * the conveyance could be construed as a 'voluntary affirmative completed act' connoting an abandonment".

While I agree with Special Term that the intent of the owner in possession at the time of the 1974 rezoning is of paramount importance, I would draw an antithetical inference from the May, 1975 reconveyance of the property. That reconveyance, *in lieu of foreclosure,* evidences that the prior owner was in such financial difficulty as to be unable to meet its mortgage payments. There can be no intent to abandon where the cessation of the use is involuntary (1 Anderson, American Law of Zoning [1st ed], § 6.59). It is widely recognized that breaks in continuity of use due to financial difficulties or an unfavorable business climate represent involuntary cessations

of use which do not preclude resumption of the original nonconforming use (Ann. 56 ALR3d 14, §§ 2 [a], 21, 31; 8A McQuillin, Municipal Corporations [3d ed rev], § 25.196).

At bar, while there was no direct evidence of the intervenors' predecessor's intent, the evidence supports the inference that the property was not used largely because the owner was in financial straits. Furthermore, nonuse alone is not determinative of the question of abandonment (8A McQuillin, Municipal Corporations [3d ed rev], § 25.192). The decision of a zoning board should not be disturbed unless the board acted in a manner that was in any way arbitrary, unreasonble, irrational or indicative of bad faith; if there is a rational basis for the decision, that decision should be sustained *(Matter of Cowan v Kern,* 41 NY2d 591, 599). On this record, it cannot be said that the board's determination has no rational basis and is not supported by substantial evidence (see *Matter of Cowan v Kern, supra).*

SUOZZI, J. P., and HAWKINS, J., concur with GULOTTA, J.; MARGETT, J., dissents and votes to reverse the judgment insofar as it has been appealed from, and dismiss the proceeding, with an opinion.

Judgment of the Supreme Court, Suffolk County, dated August 26, 1976, modified, on the law, by deleting therefrom the provision which permanently enjoined the Zoning Board of Appeals of the Town of East Hampton from issuing a certificate of occupancy to the intervenors for the subject premises. As so modified, judgment affirmed insofar as appealed from, without costs or disbursements, and matter remanded to the said board for further proceedings in accordance with the opinion of Mr. Justice GULOTTA.