■  RONALD RORIE et al., Appellants, v WOODMERE ACADEMY, Respondent.—In an action, *inter alia,* to enjoin the defendant from using its property as a summer day camp and to recover damages, plaintiffs appeal from a judgment of the Supreme Court, Nassau County, entered July 19, 1979, which, after a nonjury trial, dismissed the complaint. Judgment affirmed, with costs, on the opinion of Mr. Justice Farley at Special Term. Damiani, J. P., Mangano and Margett, JJ., concur.

Lazer, J., dissents and votes to reverse the judgment and grant judgment in favor of the plaintiffs to the extent of enjoining defendant from operating a summer day camp on its property, with the following memorandum: The plaintiffs in this action are, *inter alia,* seeking to enjoin defendant Woodmere Academy's use of its school property for a summer day camp on the ground that the operation violates the Town of Hempstead zoning ordinance. The defendant's original response to this allegation was (1) that the summer use simply constituted a summer school and was therefore legal; and (2) that, in any event, it possessed a legal nonconforming right to utilize its premises for a summer day camp. After a trial, Special Term found that the challenged use was a school and dismissed the complaint. On appeal, the judgment of dismissal was reversed by this court, which determined that the summer operation actually was a day camp and remanded the nonconforming use issue to Special Term for a new hearing *(Rorie v Woodmere Academy,* 70 AD2d 908). At the conclusion of the new hearing, Special Term decided in defendant's favor and again dismissed the complaint. On this second appeal, the majority agrees with Special Term's determination that the day camp use is a legal nonconforming use. I dissent. The record establishes that the defendant's property was used as a day camp by "Coach Pop La Rue" from 1930, prior to the enactment of the Hempstead zoning ordinance, until 1957, and that during the summers of 1959, 1965, 1966 and 1967 the defendant's trustees permitted the YMCA to utilize the premises

for day camp purposes. After the summer of 1967 no day camp use was made of the property until the current operation was commenced in the summer of 1978. My review of the record reveals no basis for a finding that the defendant's right to use the property for a day camp continued unabandoned from the end of the summer of 1967 until it was reinstituted in 1978. When this action was begun, the defendant contended that the summer use was nothing more than a summer school. That pretense having been shattered by this court's prior decision and the resulting remand, the minds of the defendant's trustees and the minutes of their meetings have been scoured to produce evidence that at various times in the 11 years between the summers of 1967 and 1978 use of the property for a day camp was discussed by the trustees. But more than discussion is required if intent to abandon is to be belied after a protracted period of nonuse (see *Matter of Deyo v Hagen,* 41 AD2d 790). There must be some overt conduct—such as the expenditure of money (see *Village of Sands Point v Sands Point Country Day School,* 2 Misc 2d 885, affd 2 AD2d 769)—manifesting an intent to put the property to the nonconforming use *(Matter of Concerned Citizens of Montauk v Lester,* 62 AD2d 171). At best, the evidence adduced establishes that from time to time during the 11 years of nonuser, the matter of the utilization of the property for a summer day camp was a matter of conversation among the trustees and, in 1973, it was the subject of a committee report which was not voted upon. But during that period two propositions to actually put the property to day camp use were rejected. In 1971 the defendant refused an offer from the Atlantic Beach Day Camps to build a swimming pool on the premises and to pay $10,000 rent for use of the premises. In 1973 the offer of Sunrise Day Camps to use the premises similarly was declined. The rejection of these offers was wholly at variance with any intent to continue a nonconforming use, particularly since the defendant would have received considerable financial remuneration had it permitted the use. In my view, the majority's determination is antithetical to well-established principles that the ultimate ends of zoning will be accomplished as nonconforming uses terminate with time (see *Matter of Harbison v City of Buffalo,* 4 NY2d 553, 560). If 11 years of nonuser can be overcome by proof that from time to time the owners or managers of the property involved talked about a future resumption, then the concept that nonconforming uses should be—and, in time, will be—eliminated is wholly without validity. We are, in this case, permitting the revival of a nonconforming use for which no special facilities ever were established and which had long since ceased to exist as the result of voluntary action of the owner. I therefore vote to reverse the judgment and grant plaintiffs judgment to the extent of providing them with the injunctive relief sought.