OPINION OF THE COURT
Frank M. Klinger, J.
These cases present similar and in some cases virtually identical issues.
In all of the cases that have gone to trial, there is no doubt in the court’s mind that the prosecutor has proven all of the elements of the respective charges on the respective times and dates alleged in each of the accusatories. There is no doubt in the court’s mind that the named defendants each owned the various homes in question and that on the dates and times in question that they rented to more than two unrelated persons. The lack of relationship of the renters in each subject case was established by the sworn testimony of the renters themselves.
The defendants’ contention in several of these cases is that the defendants had a prior nonconforming use. The Oswego Zoning Ordinance defines “non-conforming use” as: “Use of land or structure which does not comply with all regulations for the district in which it is located, where such use conformed to all applicable laws, ordinances, and *898 regulations prior to the enactment or amendment of this ordinance.” (Emphasis added.) Section 230 of the Oswego Zoning Ordinance provides that with the exception of abandonment, change to another nonconforming use or extension of nonconforming use, “any non-conforming use may be continued indefinitely”.
This concept of “prior non-conforming use” is known to laymen as the “grandfather clause”. What it means is that, regardless of the feelings of the neighbors of a particular property owner, the “grandfather clause” as enacted by the Oswego Common Council protects property owners and their subsequent grantees from what otherwise would amount to an arbitrary seizure of their property without just compensation. The “grandfather clause” or prior nonconforming use means that any use that was legal when it was established can, if not abandoned or otherwise impermissibly changed, be continued indefinitely, despite a change in the local ordinance making such use illegal. (1 Anderson, New York Zoning Law and Practice [2d ed], §§ 6.01, 6.07, and other cases cited thereunder; Oswego Zoning Ordinance, § 230.)
The old Oswego City Ordinance, in effect through August 12, 1973, permitted one-family and two-family dwellings in R-3 (residential) and B-2 (Central Business) districts provided that all regulations were complied with. The new zoning ordinance, effective August 12, 1973, prohibited both one-family and two-family dwellings from Central Business districts — they are not enumerated among the permitted uses — and also defined “family” in such a manner as to include as many as five unrelated persons, all of which had to live, sleep, cook and eat on the same premises as a single housekeeping unit. The R-3 district, section 440, continued to permit one-family and two-family dwellings.
A 1978 amendment changed the definition of family to limit the number of unrelated persons who may constitute a family to two.
Common sense would seem to tell us, as the prosecutor has repeatedly urged, that the burden of proof as to a prior nonconforming use must be upon the defendant, since the *899 prosecutor cannot possibly be expected to anticipate in advance and to disprove every possible conceivable defense. The main authority for this proposition, however, would seem to be New York Jurisprudence (vol 67, Zoning and Planning Laws, § 452, p 960) which states that: “The defendant asserts a valid defense where he alleges that the use complained of is one which he may continue as of right because it is a valid nonconforming use.” (People v Perkins, 282 NY 329.) The Court of Appeals in the Perkins decision, however, made no mention of the question of burden of proof.
In any event, however, the New York State Legislature resolved the issue with the enactment in 1965 of the New York State Penal Law. Section 25.00 of that law, as defense counsel aptly points out, is entitled “burden of proof” and states that:
“1. When a ‘defense,’ other than an ‘affirmative defense, defined by statute is raised at a trial, the people have the burden of disproving such defense beyond a reasonable doubt.
“2. When a defense declared by statute to be an ‘affirmative defense’ is raised at a trial, the defendant has the burden of establishing such defense by a preponderance of the evidence.”
Moreover, subdivision 2 of section 5.05 of the Penal Law states that: “2. Unless otherwise expressly provided, or unless the context otherwise requires, the provisions of this chapter shall govern the construction of and punishment for any offense defined outside of this chapter and committed after the effective date thereof, as well as the construction and application of any defense to a prosecution for such an offense.”
People v Chesler (71 AD2d 792, 793-794) referred to a violation of provisions of the Lien Law. The Appellate Division, Fourth Department, indicated that inasmuch as the Legislature “did not denominate subdivision 2 of section 79-a of the Lien Law as an affirmative defense as required by section 25.00 of the Penal Law and it did not indicate that the burden of proof was to be shifted to the defendant (see, e.g., People v Strong, 47 AD2d 798) * * * *900 the court’s charge placed the burden of proof on [the] defendant improperly”.
There seems little doubt that the Oswego Common Council could have designated the establishment of a prior nonconforming use to be an “affirmative defense” thereby putting the burden of proof on the defendant, since the United States Supreme Court has held in the case of Patterson v New York (432 US 197), that a State may constitutionally place the burden of proof on a defendant for any defense that does not negative any of those facts that constitute the elements of the crime, which the State, of course, has the burden of proving beyond a reasonable doubt.
Yet the Oswego Common Council, for whatever reason, did not label the establishment of a “prior nonconforming use” to be an “affirmative defense”. Therefore, pursuant to section 25.00 of the Penal Law, “unless the context otherwise requires” (§ 5.05, subd 2), it is a defense which, when “raised” at trial, the prosecutor must disprove beyond a reasonable doubt.
Does the “context otherwise require” the burden of proof to be on the defendant? The prosecutor apparently feels that to require him to disprove beyond a reasonable doubt a defense of a prior nonconforming use presents a difficult if not impossible burden of proof.
Four observations are in order. First, if the burden of proof upon the prosecutor is difficult, it is difficult only because the Oswego Common Council in its zoning ordinance specifically did not designate a prior nonconforming use to be an “affirmative defense” rather than a “defense”. Thus, if the prosecutor, who is also the city attorney, has a complaint, his complaint is with his own city common council.
Second, the burden of proof upon the prosecutor, even if difficult, is by no means impossible. The accusatory instruments against Burns and against A. J. C. Apartments, Inc., for 131 West Bridge Street, for example, include a number of affidavits which are replete with references to the properties in question as formerly being a “one family dwelling” and the desire of the affiants that said properties *901 once again return to their alleged former status as a “one family dwelling”. Since these witnesses were not called to testify, we can, of course, give no credence to their affidavits for purposes of a factual determination. Their existence is merely illustrative of the fact that the prosecutor does not bear an impossible task when called upon to disprove the affirmative defense of “prior non-conforming use” when such defense is properly raised.
Third, as defense counsel aptly pointed out, to place the burden of proving a prior nonconforming use upon the defendant, may well be unreasonable. Persons who legally rent to students or others generally may have difficulty “proving” according to law that the students were unrelated since the students frequently left the area for. parts unknown. Once the ordinance changed in 1973, the city’s property owners did not commence declaratory judgment actions en masse to declare their prior nonconforming use statuses. Since the city does not frequently prosecute a violation for a number of years, it might well be deemed unreasonable if the common council had placed the burden upon a defendant property owner to prove the existence many years ago of his or her “non-conforming use”.
For example, all of the complainants on the Bridge Street properties are themselves located in a B-2 Central Business district which prohibits one-family and two-family dwellings for both related and unrelated persons! These complainants, themselves, could therefore be subject to a “zoning complaint” and, if such were filed, would likely have to raise the defense of a “prior non-conforming use” prior to 1973. They might very well have difficulty establishing such — particularly if they purchased their properties since 1973. Similarly if any of these complainants should sell their property, the subsequent purchasers would have even more difficulty establishing a prior nonconforming use — were it the burden of a defendant to prove a prior nonconforming use.
Last, but by no means least, in our reasons for holding that the burden of disproving a prior nonconforming use when the issue is raised is shifted as a matter of law to the prosecutor, is simply that the statutes, the Penal Law and Oswego City Zoning Ordinance, say so clearly and unam *902 biguously. I do not believe that the words “unless the context otherwise requires” can possibly be constitutionally construed so as to permit the courts rather than the Legislature to shift the burden of proof from that which the State Legislature and the Oswego Common Council placed upon the prosecutor to a defendant to the prejudice of the defendant.
“The courts in construing statutes should avoid judicial legislation” (McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 73, 76, 94).
There is, therefore, no doubt that as defendant aptly claims in his brief, once the defendant has “raised” the issue of prior nonconforming use, under the Oswego City Zoning Ordinance, it is the burden of the prosecutor to disprove that defense beyond a reasonable doubt.
The next question presented about which there is very little New York State law is: How much evidence must a defendant present to “raise a defense within the meaning of section 25.00 of the Penal Law? Clearly he must do more than simply stand up and say “I raise this defense”.
In the Burns case, the witness Parker stated that the property was conveyed to him in April, 1973 but that it was rented, beginning in September of 1973 to five students with different last names, each year until the property was sold by him in October, 1979 to the defendant. The witness testified that he rented each year to five students, all boys, of approximately the same age, that the witness knew of no relationship between the renters, and that each tenant paid his own rent. The tenants did not constitute any children under age 15 or 16 or any adults over the age of 30 or 40. The witness did admit that the tenants “could have been related”.
The witness Grala testifying concerning the 131 West Bridge Street property of defendant A. J. C. Apartments, Inc., stated that he owned the property since 1973 but that from April of 1973 to October of 1974 the property was owned by a nuclear family of related persons. Beginning in October of 1974, the witness leased the premises to persons who, as far as he knew, were unrelated. He testified that the renters were “students”, had different last names, paid *903 their own rent individually and that he did not believe they were related, although the witness admitted that he did not know or care if the students were related or not. There were students, including four people, three females and one male, living there during the 1977-1978 school year and students renting from the spring of 1978 through the spring of 1979 school year.
The violations alleged at 246, 248, 2481/2 East Second Street resulted in similar testimony by Alan J. Cole for the defendant, A. J. C. Apartments, Inc. His testimony as to the premises being rented by “students” who had different last names and paid the rent separately, however, was confined to the period of time in May of 1979. The witness Cole, who is the president and sole shareholder of the defendant corporation, indicated that approximately 90% of his tenants are students. On another occasion he indicated that all of his residents had been students.
However, the only testimony as to any period of time prior to April, 1978 in that case was by the witness Cole who indicated that he had observed the subject apartments in 1977, that he did not observe any children under 15 or 16 or any older people over the age of 30 or 40, that the “decor” of the apartments, i.e., posters on walls, mattresses and books lying around, was that of “students”.
The prosecutor objected to most of the foregoing testimony. We admitted it as relevant to the question of whether the defendants and/or their predecessors in title rented to nonrelated persons.
“[E]verything which is logically probative, that is, relevant, is admissible unless excluded by a clear ground of policy or rule of law.” (Fisch, New York Evidence [2d ed, 1977], § 3, p 4.) These exclusions are danger of undue, prejudice, possibility of undue prolongation of the trial, danger of unfair surprise and possibility of confusion of issues. (Fisch, id., p 5.)
The best definition of relevancy was provided by the Chief Judge of our highest court, the New York State Court of Appeals, Judge Cooke in People v Davis (43 NY2d 17, 27). Relevant evidence means “ ‘evidence having any tendency to make the existence of any fact that is of *904 consequence to the determination of the action more probable or less probable than it would be without the evidence’ ” (citing 13 Uniform Laws Ann [master ed], Rules of Evidence, rule 401).
The prosecutor maintained that none of the evidence is relevant toward establishing the fact that defendants rented to unrelated persons, since in his view all of the foregoing evidence would still not preclude the fact that the various students, with different last names, paying rent separately, were nonetheless related.
We cannot agree. Defendant’s evidence is “circumstantial” evidence. It has been held that “circumstantial evidence is frequently more reliable and stronger than direct proof by eyewitness testimony” (People v Gallo, 75 AD2d 148, 153; People v Leach, 57 AD2d 332, 336, affd 46 NY2d 821). The test as to its sufficiency is “‘whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts.’ ” (People v Borrero, 26 NY2d 430, 435; People v Gallo, supra; People v Smith, 23 NY2d 955.) The Appellate Division, Fourth Department, is very clear that regardless of any misapprehension by the parties as to the burden of proof as to a defense, in fact, the burden of proof to disprove a defense is upon the prosecutor beyond a reasonable doubt. (People v Chesler, 71 AD2d 792, supra.)
How much evidence need be testified to to “raise” the affirmative defense, thereby shifting the burden? The defendant’s evidence need not be “ironclad”, but must be substantial. (See People v Bacon, 84 AD2d 680; see, also, People v Allen, 74 AD2d 640.)
The following facts do render it more probable than it would be without the evidence (see People v Davis, supra) that the tenants of the various defendants were unrelated: The tenants were “students”. It is common knowledge that students at a State university such as Oswego tend to come from a wide variety of places and backgrounds and very rarely tend to be related to each other. Persons with different last names generally tend not to be related to each other. Relatives, particularly married couples, generally tend to pay the rent together in one lump sum rather *905 than separately. In these cases, the tenants paid their own rent. Their ages may be significant as well. Although it is certainly possible that the defendant Burns and the witness Grala at 131 West Bridge Street were renting to related students, the circumstantial evidence presented is at least of sufficient quality that an ordinary man of reasonable intelligence would doubt that they were related, if not affirmatively reach the conclusion that the tenants were not related. Although I frankly doubt that such proof constitutes proof beyond a reasonable doubt of the alleged lack of relationship, it would certainly be enough to “raise that defense” if the proof were for the applicable time period.
This defense, unfortunately for the defendants, however, is not applicable, for one simple reason that has not even been urged upon the court: Namely, the use of renting to unrelated persons is not and cannot constitute a prior nonconforming use unless it was a legal use at the time it commenced. (67 NY Jur, Zoning and Planning Laws, §§ 81, 82; 12 NY Jur 2d, Buildings, Zoning and Land Controls, §§ 222, 224, 228; Village of Waterford v O’Brien, 39 AD2d 490, 491; Thayer v Baybutt, 29 AD2d 486, affd 24 NY2d 1018; Matter of Concerned Citizens of Montauk v Lester, 62 AD2d 171; Matter of Ilasi v Board of Zoning Appeals of City of Long Beach, 79 Misc 2d 436; Dalton v Van Dien, 72 Misc 2d 287; and 1 Anderson, New York Zoning Law and Practice [2d ed], §§ 6.01, 6.07.)
Both the 131 West Bridge Street property and the 155 West Bridge Street property (Burns) are zoned B-2 Central Business districts. Therefore, any use for rental to unrelated students commenced subsequent to August 12, 1973, is not a prior nonconforming use — but rather an illegal use, unless said use was legally established before August 12, 1973. There was no proof or even allegation in either case of such use having been established prior to that date. Although the prosecutor did not press the foregoing analysis, nonetheless, as a matter of law, defendants certainly have not “raised” the issue of a prior nonconforming use of subject premises as a dormitory, when there is no evidence that the respective premises have ever been legally used as a dormitory or for rental to unrelated persons.
*906 I deem totally insufficient to “raise” the issue of a prior nonconforming use the very sparse testimony as to the condition of those apartments prior to 1978. Even if we accept Mr. Cole’s testimony at face value, nowhere did he indicate how many “students” were in each apartment prior to April, 1978. It is perfectly consistent with Mr. Cole’s testimony to believe there were only two renters in each apartment prior to April, 1978. Not only did Mr. Cole fail to state how many “students” he observed — but he failed to establish how many were actually living there. Of course, any other “students” he may have observed at the premises could just as easily have been visiting.
Since the defendant’s testimony does not in any way indicate that more than two unrelated persons occupied subject premises prior to April 24,1978, he has not “raised” the issue.
I find the defendants guilty as charged.
The defendants will report for sentencing on the 20th day of October, 1982, at 2 o’clock in the afternoon.